Fee Paid

Pio S. Kim (SBN 156679)
pio.kim@limnexus.com
**LimNexus LLP**
1055 West Seventh Street, 28th Floor
Los Angeles, California 90017
Phone: (213) 955-9500 | Fax: (213) 955-9511

Attorneys for Movant OB USA, Inc.,
dba BWS Group Co.

FILED
CLERK, U.S. DISTRICT COURT

JUN - 5 2018

CENTRAL DISTRICT OF CALIFORNIA
BY                      DEPUTY

LA CV18 04981-RGK-PLAx

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### (Western Division)

| | |
|---|---|
| OB USA, INC., dba BWS GROUP CO. <br><br> Movant, <br><br> v. <br><br> THE UNITED STATES OF AMERICA, <br><br> Respondent. | Case No. <br><br> **NOTICE OF MOTION AND MOTION FOR RETURN OF PROPERTY** <br><br> [Filed concurrently with Declarations of IK HO CHOI, CHANG LEE, JAY SONG AND PIO S. KIM; and [Proposed] Order] <br><br> Judge: <br><br> Date: 7-2-18 <br> Time: 9:00 a.M <br> Courtroom: 850 Roybal Building 8th Floor |

## NOTICE OF MOTION AND MOTION TO RETURN PROPERTY

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**NOTICE IS HEREBY GIVEN** that on June       , 2018 at       , or as soon thereafter as the matter may be heard, in the courtroom of the Honorable

{01195325}

1                  United States District Judge for the Central District of

2 California, Courtroom      , located at the First Street Courthouse, 350 W. 1st Street,

3 9th Floor, Los Angeles, California, movant OB USA, Inc., doing business as BWS

4 Group Co. will move and hereby moves for an order ordering the United States

5 government, through the Bureau of Customs and Border Protection of the Department

6 of Homeland Security, to return a shipment of fruit wines seized from the movant,

7 pursuant to Rule 41(g) of the Federal Rules of Criminal Procedure.

8         This motion is brought on the grounds that:

9         (1)    the seizure was unconstitutional since the government lacked the requisite

10 probable cause, and

11         (2)    that even if there was such probable cause at the time of the seizure, the

12 continued deprivation of the shipment is unconstitutional since a neutral third party

13 with the most credible knowledge has provided the government with the

14 incontrovertible evidence establishing the lack of probable cause, as evidenced by the

15 government's conditional offer to return the shipment to the movant.

16         The Motion is based on this Notice of Motion and Motion, the attached

17 Memorandum of Points and Authorities, the Declarations of Pio S. Kim, Ik Ho Choi,

18 Chang Lee and Jay Song, and on such other further written and oral argument as may

19 be presented at or before the time the Court makes a ruling on this Motion.

20

21 DATED: June 4, 2018             **LimNexus, LLP**

22

23

24                            By: _____

25                              Pio S. Kim
                               Attorneys for Movant OB USA,
                               Inc., dba BWS Group Co.

26

27

28

# TABLE OF CONTENTS

I.   INTRODUCTION ............................................................................................ 1

II.   SUMMARY OF FACTS .............................................................................. 2

   A.   The Good Day Fruit Wines Are Made From Fermentation And Are
        Wines ............................................................................................... 2

   B.   The Fruit Wines Are Identified As Wines Pursuant To The US
        Government's Prior Approval And Request ......................................... 3

   C.   The Good Day Sojus Are Identified As Soju .................................... 4

   D.   OB USA Sold Some Fruit Wines In 6-Pack Boxes For The Sojus
        After Converting the Boxes Into Wine 6-Pack Boxes ....................... 4

   E.   CBP Seized The Shipment After Obtaining Information Showing That
        The Wines Are Wines ......................................................................... 5

   F.   When Provided With The Uncontrovertable Evidence That The Fruit
        Wines Are Wines,  The Government Refused To Acknowledge Or
        Verify The Evidence And, Instead, Made A Conditional Offer To
        Release The Shipment ........................................................................ 6

III.   DISCUSSION ............................................................................................. 8

   A.   Rule 41(g) Authorizes This Motion .................................................... 8

   B.   The Government Had No Probable Cause To Seize The Shipment ..... 8

   C.   The Government Has Been Provided with Incontrovertible Evidence
        That The Fruit Wines are wines And Must Return The Shipment ..... 10

IV.   CONCLUSION ........................................................................................ 12

**MOTION FOR RETURN OF PROPERTY**

1

## <u>TABLE OF AUTHORITIES</u>

2

3                                                                                            **<u>Page(s)</u>**

**<u>Cases</u>**

4

*Illinois v. gates*
5           (1983) 462 U.S. 213.............................................................................9

6
*Rodis v. City, County of San Francisco*
7           558 F.3d 964, 969 (9th Cir. 2009) .....................................................9

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**MOTION FOR RETURN OF PROPERTY**

1

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2

**I.   <u>INTRODUCTION</u>**

3   The Bureau of Customs and Border Protection ("CBP") of the Department of
4   Homeland Security wrongfully seized a shipment of 2,640 cases of pineapple fruit
5   wine and 1,320 cases of peach fruit wine (the "Shipment"), identified as Entry No.
6   ATE02685830, belonging to movant OB USA, Inc. ("OB USA"), doing business as
7   BWS Group Co. The seizure was justified on the ground that the wines were not wines
8   as reported to CBP, but were spirits, a form of alcohol made from distillation.  Wines
9   are made from fermentation.  The seizure was also justified on the ground that because
10  the wines were spirits, they should have been bottled in the spirit-size bottles, not
11  wine-size bottles.   In seizing the Shipment, it appears that CBP was acting on its own
12  initiative and also on the request by the Alcohol and Tobacco Tax and Trade Bureau
13  ("TTB") of the U.S. Department of The Treasury.

14  At the time of the seizure, CBP knew or should have known that it had no
15  probable cause to believe that the wines were spirits.  Further, after the seizure, OB
16  USA provided the government with incontrovertible evidence showing that the wines
17  were made from fermentation and were indeed wines, including the written statements,
18  manufacturing documents and pictures from the manufacturer of the wines and the test
19  results regarding the contents of sample wines.

20  Instead of releasing the Shipment, the government now appears to be paralyzed
21  by the disagreement or, more precisely, inaction by one of its agencies.  CBP has
22  offered to release the Shipment to OB USA if OB USA imports the wines as spirits,
23  without waiving its right to seek judicial determination that the wines are wines.
24  However, CBP's offer required TTB to consent to the release or waive the claim that
25  the wines are contained in wrong-size bottles.  TTB has failed to respond to OB USA's
26  inquiry concerning whether it would agree to consent to the release or waive the claim.

27  Meanwhile OB USA is precluded from importing the entire line of wines and
28  continues to incur serious financial and human costs.

1  II.   **SUMMARY OF FACTS**

2       A.    **The Good Day Fruit Wines Are Made From Fermentation And Are**

3             **Wines**

4       OB USA imports into, and sells in, the United States (the "US") a line of

5  alcoholic beverages referred to as the Good Day fruit wines.  Declaration of Chang Lee

6  ("Lee Decl."), para.   3.

7       Muhak Co., Ltd, a South Korean company, manufactures the Good Day fruit

8  wines using the alcohol from the fermentation of rice and natural fruit flavorings.  No

9  distillation alcohol is used in manufacturing the wines.  The rice and fruits used in

10 making the wines are grown and harvested in South Korea, and the wines are

11 processed or manufactured in South Korea.  Declaration of Ik Ho Choi ("Choi Decl."),

12 para. 3-7.

13      The Good Day fruit wines include the Good Day Red, which contains

14 pomegranate flavor;  the Good Day Yellow, citron; the Good Day Blue,  blueberry;

15 the Good Day Scarlet,  grapefruit ; the Good Day Pink, peach; and the Good Day

16 Pineapple, pineapple. Lee Decl., para. 5.  (Because the wine bottles are green, there is

17 no Good Day Green.)

18      OB USA also imports into, and sell in, the US the Good Day soju and the Good

19 Day white soju.  Soju is a very popular Korean alcoholic beverage made from

20 distillation, not fermentation, and is therefore a spirit.   Lee Decl., para. 6.

21      As is the case with the Good Day fruit wines (the "Fruit Wines"), Muhak

22 produces the Good Day Soju (the "Regular Soju") and the Good Day white soju

23 (individually, the "White Soju", and collectively with the Regular Soju, the "Sojus").

24 The alcohol content percentage for the Fruit Wines, the Regular Soju and the White

25 Soju are, respectively, 13.5%, 16.9% and 19%. Lee Decl., para. 7.   The Fruit Wines

26 come in 360 ml bottles and the Sojus in 375 ml bottles.   Lee Decl., para. 8.

27

28

**MOTION FOR RETURN OF PROPERTY**

**B.** **The Fruit Wines Are Identified As Wines Pursuant To The US Government's Prior Approval And Request**

The front and back labels on the bottles of the Fruit Wines identify the wines as wines.  The labels state "RICE WINE WITH (particular fruit used) Flavor."  Lee Decl., para 9.

In fact, it was the US government, namely, TTB, who required the wording "RICE WINE WITH (particular fruit used) FLAVOR" be placed on the labels for the Fruit Wines.  In or around 2015 and 2016,  in anticipation of importing the Fruit Wines in to the US and pursuant to the TTB regulations,  OB USA  sought and obtained the approvals of  TTB  for the labels to be placed on the bottles of the Fruit Wines.  Lee Decl., para.11-15.

At that time, OB USA submitted samples of the Fruit Wines together with the written documents listing the ingredients for the wines and describing the manufacturing process, including the fermentation of rice.   TTB approved the Fruit Wines as sake, another form of alcohol beverage made from rice.  The TTB regulations treat sake as a wine for importation purposes.  Accordingly, TTB requested that the front and back labels for the bottles of the Fruit Wines state that the wines are "RICE WINES WITH (particular fruit in question) FLAVOR".  Lee Decl.,  para.11-15.

While spirits and other forms of wines are subject to the TTB bottle size regulations, sake is exempted from such regulations.   Consequently, TTB did not require OB USA to submit a request for approval of the size of the bottles for the Fruit Wines. Lee Decl., para. 15.

OB USA's website, BWSGROUPCO.COM, identified the Fruit Wines as fruit wines.   The home page stated "Good Day Soju & Fruit Wine" at the top and the bottom of the page and stated, in the middle of the page,  "our SOJU & FRUIT WINES brand" next to the picture of the bottles of the Sojus and the Fruit Wines.

1  However, the website included the Fruit Wines on the page under the soju tab.   Lee

2  Decl., para. 16-18.

3       Further, at a certain point in time, the soju page described the Fruit Wines as

4  soju.  The soju page was replete with critical mistakes made by OB USA's website

5  designer. The designer cut and pasted the description of the Regular Soju for the Fruit

6  Wines, including the wrong UPC codes and alcohol content percentage.  The designed

7  also failed to reflect in the website pages OB USA's instruction that the wines are

8  wines. Lee Decl., para. 18-19 .

9       Finally, the Fruit Wines and the Sojus were usually thought of as belonging to a

10  single discreet advertisement unit; OB USA usually referred to them together because

11  they were all Good Day products, the promotional materials provided by Muhak had

12  them together, and their bottles looked so much alike.  As mentioned above, the

13  website alone contained three instances of "Good Day soju & fruit wines."  The

14  inclusion of the Fruit Wines in the soju page was a result of the practice of grouping

15  the Good Day products together, not because the Fruit Wines were soju.  Lee Decl.,

16  para. 20.

17       **C.    The Good Day Sojus Are Identified As Soju**

18       OB USA's website identified the Sojus as soju.  Further, the front and back

19  labels on the bottles of the Regular Soju and the White Soju specifically identify the

20  Sojus as distillation alcohol and spirits.  They state "ALCOHOL DISTILLED FROM

21  RICE" (on the bottle of White soju) & DISTILLED SPIRITS SPECIALTY DILUTED

22  RICE ALCOHOL (on the bottle of Good Day soju)." Lee Decl., para. 9.

23       **D.    OB USA Sold Some Fruit Wines In 6-Pack Boxes For The Sojus After**

24            **Converting the Boxes Into Wine 6-Pack Boxes**

25       Muhak delivers the Regular Soju and White Soju come in both 20-bottle boxes

26  and 6-bottle boxes ("6 Packs").  However, Muhak delivers the Fruit Wines only come

27  in 20-bottle boxes, with the exception of Good Day pineapple wine.  Declaration of

28  Jay Song ("Song Decl."), para. 4.

**MOTION FOR RETURN OF PROPERTY**

1    OB USA sells about 60% to 70% of the Good Day Fruit Wines in 20-bottle

2    boxes.  OB USA sells about 30% to 40% of the Fruit Wines in 6 packs.  However,

3    because there are no 6 packs made for the non-pineapple wines, OB USA converts the

4    6 pack boxes for the Sojus (the "Soju 6 Packs") into 6 pack boxes for the wines (the

5    "Wine 6 Packs").  These wine 6 packs are sold to markets and other non-restaurant

6    retailers.  Restaurants sell the wines in individual bottle and do not request the Wine 6

7    Packs.  Song Decl., para. 5-8.

8         OB USA has stickers or self-adhesive labels (the "Stickers") for each variety of

9    the non-pineapple Fruit Wines and place them on the Soju 6 Packs to convert them into

10   the Wine 6 Packs.  The Stickers cover the word "soju" on the Soju 6 Packs, and change

11   the soju product number to the wine product number.  Song Decl., para. 5-8.

12        OB USA uses 3 employees to place the Stickers on the Soju 6 Packs and place

13   the wine bottles into the converted Wine 6 Packs.  The employees' names are

14   Alvaro Martinez, Edwin Patini, and Francisco Chavez.  Francisco has been let go as a

15   result of the lack of work caused by the government's seizure of the Shipment and

16   threatened seizure of the future shipments.  Song Decl., para. 8.

17        **E.    CBP Seized The Shipment After Obtaining Information Showing**

18             **That The Wines Are Wines**

19        On or about March 14, 2018, TTB and CBP inspected OB USA's premises at

20   13152 Imperial Highway, Santa Fe Springs, California.   Lee Decl., para. 23.  Among

21   the documents provided to the agencies during or shortly after the inspection are

22   invoices showing that OB USA sold the Fruit Wines at approximately $59 per 20-

23   bottle box and the Sojus at approximately $37 per 20-bottle box.  Lee Decl., para.   27.

24   The Fruit Wines were in the 20-bottle boxes and the converted Wines 6 Packs, some of

25   which were fully converted (*i.e.* the words "soju" were covered) and some of which

26   were only partly converted (*i.e.* the words were not covered).  Song Decl., para. 9-11.

27        On or about March 30, 2018, CBP issued Notices of Action that the Shipment

28   must be exported to Korea or must be destroyed under CBP's supervision.  The

1   Notices of Action stated that OB USA misrepresented the Fruit Wines as wines to CBP

2   when they were spirits, and that they were bottled in wrong-size bottles.

3   Lee Decl., para. 21.

4        CBP claims that the seizure is proper because (1) in the Certificates of Origin,

5   Muhak described the Fruit Wines as liqueurs, (2) OB USA identified the Fruit Wines

6   as soju in its website, (3) on the day of the inspection, CBP observed that OB USA had

7   the wines in the 6-pack boxes for the soju, and (4) one or more customers of OB USA

8   stated that they sold the Fruit Wines as the Sojus at the prices of the Sojus.

9        **F.      When Provided With The Incontrovertible Evidence That The Fruit**

10          **Wines Are Wines,  The Government Refused To Acknowledge Or**

11          **Verify The Evidence And, Instead, Made A Conditional Offer To**

12          **Release The Shipment**

13       A few days after the inspection, OB USA and CBP collected samples of the

14   Fruit Wines to be tested for their contents to determine whether or not they were wines

15   or spirits.  OB USA samples were provided to two independent laboratories, and their

16   results indicated that the Fruit Wine samples had levels of alcohol and glycerol

17   consistent with the wines being wines. Wines have less alcohol but more glycerol than

18   spirits.  Declaration of Pio S. Kim ("Kim Decl."), para. 2-5.

19       On April 5, 2018, OB USA provided CBP and TTB with the test results from

20   one of the laboratories and a letter from Muhak indicating that it mistakenly described

21   the Fruit Wines as liqueurs and will change the description to wines.  The Muhak letter

22   was signed by the General Manager of the company and contained the telephone

23   number and email address for the company.  Kim Decl., para.  5.

24       To date, it is unknown to OB USA if the US government has conducted its own

25   testing of the sample as it said it would.  The government has never disputed the results

26   of the tests conducted by the laboratories used by OB USA.  However, it disregards the

27   test results on the ground that glycerol could have been added to the Fruit Wines to

28   make them appear to be wines.  Kim Decl., para. 6.

On April 16, 2018, OB USA provided TTB and CBP with a second letter from Muhak stating that the Fruit Wines only contain alcohol made from the fermentation of rice and that Muhak did not add any distillation alcohol or glycerol to the wines.   As with the first letter from Muhak, the second letter was signed by the General Manager and contained the contact information for the company.   On the same day, OB USA provided the agencies with the documents showing that the raw materials, including the rice for fermentation and the fruits for flavoring, were produced in South Korea, and describing the manufacturing process, including the fermentation of rice, for the wines, and naming the employees who worked on each stage of the process.   Kim Decl., para. 7-8.      OB USA also provided sample invoices to its customers showing that OB USA sold the Fruit Wines for approximately $59 per box and the Sojus for approximately $37 per box, in order to show that its customers could not be selling the Fruit Wines as the Sojus at the Soju prices.   Kim Decl., para. 9.

On April 18, 2018, OB USA provided the agencies with additional documents showing the machinery used for the fermentation of rice, and various factory locations for Muhak.   Kim Decl., para. 10.

On May 25, 2018, OB USA provided further documents to CBP showing the exact manufacturing process for each Fruit Wine, origins of their raw materials, and the names of the employee involved, and pictures of the manufacturing process.   Kim Decl., para. 11.

OB USA, through its counsel, has been in close communication with TTB and CBP, including its CBP local counsel.   From the very beginning of this matter, OB USA counsel informed the agencies that they did not have to accept OB USA's claim that the Fruit Wines were wines.   In these communications, counsel repeatedly asked the agencies to look to the objective facts, namely the test results of the sample wines, and the unbiased third party with the personal knowledge of how the wines were manufactured, Muhak.   Counsel also repeatedly implored the agencies to interview, at least by phone, the employees at Muhak and/or inspect the facilities of Muhak should

1  the agencies have any doubts.   Counsel also pointed out to the agencies that the best

2  evidence as to whether or not OB USA and some of its customers sold the Fruit Wines

3  as the Sojus at the soju price is to obtain invoices and sales records from the customers.

4  To OB USA's knowledge, neither agency has reached out to Muhak or any of its

5  employees.   The government has never indicated whether or not it asked the

6  customers for the invoices or sales records. Kim Decl., para. 12-14 .

7       CBP has offered to release the Shipment if (1) OB USA imports the wines as

8  spirits, without waiving any right to seek determination as to the exact nature of the

9  wines and (2) if TTB waives the claim that the wines are in wrong size bottles.   On

10  May 14, 2018, OB USA inquired TTB as to whether it would be willing to waive the

11  claim, and to date TTB has failed to respond. Kim Decl., para. 16-17.

12  ## III.   DISCUSSION

13       **A.     Rule 41(g) Authorizes This Motion**

14       Rule 41(g) of the Federal Rules of Criminal Procedure provides:

15       "A person aggrieved by an unlawful search and seizure of property or by the

16  deprivation of property may move for the property's return."

17  *Fed. Rule Crim. Pro. Rule 41(g).*

18       In the present matter, OB USA contends that the seizure of the Shipment was

19  unconstitutional as the government did not have the requisite probable cause and that

20  the continued deprivation of the shipment is likewise unconstitutional as the

21  government has no basis for continuing its possession of the shipment.

22       **B.     The Government Had No Probable Cause To Seize The Shipment**

23       On the day of the seizure, March 30, 2018, the government knew that TTB had

24  previously:

25

26

27

28

i.     tested the Fruit Wine samples,

ii.    approved the wines as sake, a wine, and

iii.   requested the wine bottle labels to state that the wines are rice wines.

At the time of the seizure, the government also knew that:

i.     sake is not subject to any bottle size requirement,

ii.    the wine bottle labels marked the wines as rice wines,

iii.   OB USA reported the wines as wines in its import documents,

iv.   OB USA website identified the wines as "Fruit Wines" at three different places on the home page,

v.    the soju page, which at one point described the Fruit Wines as soju, misstated even the most basic information about the wines, including its alcohol content and the product number,

vi.   OB USA informed the website designer that the wines were fruit wines,

vii.  OB USA used the Stickers to convert the Soju 6 Packs to the Wine 6 Packs, and there were fully as well as partly converted Wine 6 Packs, and

viii. OB USA sold the Fruit Wines for approximately $59 per 20-bottle box and the Sojus for approximately $37 per 20-bottle box.

On the other hand, Muhak described the Fruit Wines as liqueurs, and the website included the wines on the soju page and, at one time, described them as soju. The government also claimed to have been informed by one or more customers of OB USA that the customers sold the Fruit Wines as the Sojus at the Soju prices.

Probable Cause exists when law enforcement have knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe than an offense has been or is being committed. *Rodis v. City, County of San Francisco*, 558 F.3d 964, 969 (9th Cir. 2009). "[P]robable cause is a fluid concept-turning on the assessment of probabilities in particular factual contexts-not readily, or even usefully, reduce to a neat set of legal rules." *Illinois v. gates*, 462 U.S. 213, 232 (1983) (emphasis added).

1    The reasonably trustworthy information in the government's possession at the
2    time of the seizure establishes that the government knew or should have known that
3    there was no probable cause to believe that the wines were soju or some form of spirit.
4    While the Fruit Wines were identified as soju on the soju page of the website at one
5    time, the soju page has little or no weight as it misstated even the most basic
6    information about the wines.   Further, in hundreds of thousands of the front and back
7    bottle labels, numerous entry documents and the website homepage identified the Fruit
8    Wines as wines.
9        While there were Wine 6 Packs which did not have the word "soju" covered,
10   there also were Wine 6 Packs which had the word covered.   Further, about at least 60%
11   to 70% of the Fruit Wines were contained in 20-bottle boxes which did not contain any
12   reference to soju.   Finally, OB USA sold the wines for approximately $59 and the
13   Sojus for approximately $37.   Therefore, the government's conclusion and contention
14   that OB USA and some of its customers sold the Wines as the Sojus is patently
15   illogical and unreasonable.
16       The only piece of information arguably supporting the probable cause for
17   seizure is the fact that Muhak described the Fruit Wines as liqueurs.   When examined
18   in the context of this matter, this piece of information also fails to establish probable
19   cause that the Fruit Wines were soju or some other form of distillation alcohol.   It is
20   not reasonably trustworthy; the government never verified the information (when a
21   simple telephone call would have clarified the situation), and TTB previously tested
22   and approved the sample wines as wines.   Of course, the government also knew that
23   the Fruit Wines were much for expensive than the Sojus.

**C.   The Government Has Been Provided with Incontrovertible Evidence
That The Fruit Wines are wines And Must Return The Shipment**

26       As stated above, after the seizure, OB USA has provided to the government
27   unequivocal statements from Muhak that the Fruit Wines contain alcohol from the
28   fermentation from rice and that they do not contain any distillation alcohol or added

1  glycerol.  OB USA has also provided to the government the documents and pictures

2  showing the origins of the raw materials for the wines, and the fermentation process

3  for the wines.  Further, OB USA provided the government with the laboratory test

4  results showing that the alcohol and glycerol levels of the samples of the Fruit Wines

5  are consistent with the Fruit Wines being wines.

6      The government has never stated that it did not believe Muhak's statements and

7  never presented any evidence purporting to even suggest that the statements were

8  untrue.  Similarly, the government has never questioned the result of the test results.

9      Just as telling, the government has never tried to contact or interview,

10  telephonically or otherwise, the employees of Muhak or inspect Muhak's facilities

11  despite repeated pleads by OB USA.  The government also refused to indicate whether

12  or not it has in its possession any invoice or sales records from the customers of OB

13  USA who purported to have sold the Fruit Wines as the Sojus at the Soju price.

14  Because these record will establish the truthiness of the government's claim that OB

15  USA and some of its customers sold the Fruit Wines as the Sojus at the Soju price, OB

16  USA asked whether or not the government had such documents and, if it did not,

17  requested that it ask for such documents from the customers.  The government has

18  never responded to OB USA's inquiry and request.

19      Instead, CBP offered to release the Shipment if OB USA agrees to import

20  the wines as soju, without waiving its right to seek judicial determination that the

21  wines are indeed wines.  However, the offer required that TTB agree to the release.

22  OB USA is thankful for the offer by CBP as it is a recognition by CBP that OB USA's

23  inability to import the wines is having a real and painful consequences.  However,

24  TTB has not even responded to OB USA's inquiry as to whether it was agreeable to

25  the offer.  And, the offer is ultimately an abrogation of the government's

26  responsibilities.  When provided with incontrovertible evidence showing that its

27  actions are wrongful, it must desist from taking further wrongful actions or at least take

28  steps to verify the validity of the evidence.

By refusing to perform its duty, the government is continuing to inflict serious financial damages to OB USA and financial and emotional injuries to its employees, one of which has already been let go as the direct result of the government's actions.

OB USA has proven to the government that the Fruit Wines are wines and the government must return the same to OB USA unconditionally.

## IV.    CONCLUSION

For all of the reasons state above, OB USA respectfully requests that this Court Order the government to release the Shipment forthwith, without charging OB USA any cost or expense associated with the seizure, including the storage fees.

DATED: June 4, 2018                                LIMNEXUS, LLP

BY: _____
Pio S. Kim
Attorneys for Movant OB USA,
Inc., dba BWS Group Co.